Tory M. Pankopf (SBN 202581)
**LAW OFFICES OF TORY M PANKOPF LTD**
748 S Meadows Parkway, Suite 244
Reno, Nevada  89521
Telephone: (775) 384-6956
Facsimile: (775) 384-6958
tory@pankopfuslaw.com
Attorney for Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re:<br><br>CORINNE HUTTLINGER,<br><br>　　　　　Debtor in Possession. | Case No:  13-34976<br>Chapter: 11<br>DCN:  TMP-022<br>**APPLICATION FOR AN ORDER TO SHOW CAUSE WHY SANCTIONS SHOULD NOT BE ORDERED FOR CONTEMPT OF ORDER CONFIRMING CHAPTER 11 PLAN**<br>Date:  July 3, 2018<br>Time:  2:00 p.m.<br>Dept:  B, Courtroom 32<br>Judge: Hon. Christopher D. Jaime |

　　　　Debtor in Possession, CORINNE HUTTLINGER ("Ms. Huttlinger" or "Debtor"), by and through her attorney Tory M. Pankopf of the Law Offices of Tory M Pankopf Ltd, pursuant to Local Rule 5010-1 hereby moves this Court for an Order To Show Cause ("OSC") why Sanctions Should Not be Ordered for contempt of order confirming Chapter 11 Plan and Intentionally Breaching Chapter 11 Plan. This motion is based upon the Memorandum of Points and Authorities below.

Law Offices of
**Tory M Pankopf Ltd**
748 S Meadows Parkway
Suite 244
Reno, Nevada 89521
(775) 384-6956

- 1 -

**Application for Order to Show Cause re Contempt**

## I.

## POINTS AND AUTHORITIES

### A. Summary of Dispute.

On November 23, 2013, Debtor filed her voluntary bankruptcy petition. On November 10, 2015, the court entered its order confirming Debtor's second amended plan filed on July 16, 2015 ("Plan"). [Court Doc 283] Pursuant to paragraph 44(c) of the Plan, the court retained jurisdiction to hear and determine any dispute arising under or relating to the Plan.[1] On April 25, 2016, the court entered its order granting Debtor's motion to enter final decree and close case. [Court Doc 304]

Class 1d creditor, Crow Canyon Heights Homeowners' Association, and its agent, Allied Trustee Services (collectively, "Creditor"), have breached the Plan, and are in contempt of the order confirming the Plan by demanding, among other things: 1) money in excess of the terms stated in the Plan; 2) payment in full of the monies to be paid out over the 60 month and 84 month periods of time; and 3) demanding a sum of $10,958.12 to release its lien on real property commonly descried as 131 Shoshone Ct, Danville CA ("Property") which Debtor was forced to pay in order for her loan to fund.

### B. Statement of Facts.[2]

1. On October 14, 2013, Creditor recorded a Notice of Delinquent Assessment - Lien DOC 2013-0243953-00 in the Recorder's Office for Contra Costa County for $3,338.70 on Debtor's Property. See Exhibit "1".

2. On November 23, 2013, Debtor filed a petition for Chapter 11 bankruptcy (Court Document 1).

3. On December 5, 2013, Creditor filed a claim in the bankruptcy case for $3,670.74 (Claim 2-1). See Exhibit "2". The claim was comprised of secured and unsecured debt. The secured amount was $2,640.00 (assessments, excluding late fees) and the unsecured was $1,030.74 (late

---

[1] See page 15 of the Plan. [Court Doc 215 and is attached to court's confirmation order]
[2] All referenced exhibits are attached to Debtor's declaration in support of the application.

**Law Offices of**
**Tory M Pankopf Ltd**
748 S Meadows Parkway
Suite 244
Reno, Nevada 89521
(775) 384-6956

- 2 -

**Application for Order to Show Cause re Contempt**

1 fees, collection costs, and trustee fees). See Exhibit "3" of at page 9, lines 6-9 of second
2 amended plan (Court Document 215).
3 4.     On November 10, 2015, Debtor's second amended plan filed on July 16, 2015, was
4 confirmed (Court Document 283). See Exhibit "4".
5 5.     On April 25, 2016, the bankruptcy case was closed and a final decree was entered (Court
6 Document 303). See Exhibit "5".
7 6.     Debtor did not begin paying HOA assessments until March 18, 2015. Consequently,
8 assessments for December 2013 through February 2015 (15 monthly assessments) were due and
9 owing at the time the plan was confirmed.
10 7.     On or about March 2016, while applying for an equity loan on the Property, Debtor
11 discovered the Creditor's 2013 Assessment Lien remained on the Property.
12 8.     On March 16, 2016, Debtor demanded Creditor provide a reconciliation of the monies
13 owed. Creditor did not provide it.
14 9.     On April 22, 2016, Creditor's agent, Allied Trustee Services ("Allied"), sent a demand
15 letter for past due HOA assessments and other costs in the amount of $10,958.12. See Exhibit
16 "6". The amount was inclusive of prepetition assessments of $2,640.00, prepetition trustees'
17 fees, costs and expenses of $1,485.74 ("Trustee Fees"), prepetition collection cost of $175.00,
18 and an erroneous post-petition gate phone charge of $10.50. The demand did not account for
19 post-petition secured Plan payments of $132.00 or unsecured Plan payments of $18.12. See
20 Exhibit "7".

| | |
|---|---|
| **Demand** | **$15,116.24** |
| Less Post-Petition Payments | $ 4,158.12 |
| **Total Demand** | **$10,958.12** |
| Less Prepetition Assessments | $ 2,640.00 |
| Less Prepetition Trustee Fees | $ 1,485.74 |
| Less Prepetition Collection Cost | $ 175.00 |
| Less Post-Petition Secured Payments | $ 132.00 |
| Less Post-Petition Unsecured Payment | $ 18.12 |

Law Offices of
**Tory M Pankopf Ltd**
748 S Meadows Parkway
Suite 244
Reno, Nevada 89521
(775) 384-6956

- 3 -

**Application for Order to Show Cause re Contempt**

| | | |
|---|---|---|
| | Less Erroneous Gate Phone Charge | $ 10.50 |
| | **Actual Amount Owing Post-Petition** | **$ 6,251.76** |

10. The demand breached the Plan and violated the Court's order confirming the Plan because it was agreed the prepetition past due secured assessments ($2,640.00) would be paid over 60 months and the other unsecured amounts due would be paid at a rate of 31.25% per dollar ($322.11) over 84 months.

11. The demand also included prepetition collection cost of $175.00, Trustee Fees of $700.00, and an erroneous gate phone charge of $10.50 that was supposed to be charged to a new HOA member.

12. In violation of the automatic stay, breach of the Plan, and in contempt of the Court's order confirming the Plan, Creditor refused to release the lien unless Debtor paid the entire amount demanded.

13. Reluctantly and under duress, on May 2, 2016, Debtor paid the entire amount demanded by Creditor to release the lien.

14. Debtor was overcharged $4,706.36 by the Creditor.

15. The interest Debtor is paying on the amount overcharged by and repaid to Creditor is 14.95%.

16. On May 5, 2016, Creditor released its lien. See Exhibit "8".

17. On or about May 2016, Debtor demanded, again, that Creditor provide a reconciliation of the monies owed. Creditor did not provide it.

18. On or about August 30, 2016, Debtor provides documentation to Creditor setting forth her own reconciliation of monies owed, providing documentation, and asserting there is an error in the balance of her account.

19. On or about March 16, 2017, Debtor sends Creditor a cease and desist letter asserting that she has overpaid, and that Creditor has still not responded to her August 30, 2016, correspondence or provided her with its reconciliation. See Exhibit "9".

20. On November 11, 2017, Creditor finally provided its reconciliation of monies owed and asserted that, in regard to releasing the 2013 lien and complying with the terms of the Plan,

Law Offices of
**Tory M Pankopf Ltd**
748 S Meadows Parkway
Suite 244
Reno, Nevada 89521
(775) 384-6956

- 4 -

**Application for Order to Show Cause re Contempt**

1　Debtor voluntarily agreed to pay off the balances owed on the secured and unsecured portions
2　owed under the Plan because Creditor refused to release the lien unless Debtor paid the amounts
3　owing. See Exhibit "10".

4　21.　Debtor did not volunteer to pay off the entirety of the secured and unsecured portions of
5　the monies owed under the plan. Creditor refused to release its lien unless Debtor acquiesced.
6　Debtor was compelled to acquiesce because of the duress Creditor created by making its demand
7　and refusing to release the lien. If Debtor did not acquiesce then her loan would not fund.

## II.

## ARGUMENT

Damages and attorneys fees may be awarded ancillary to a contempt order so long as the awards are not punitive and they restore the status [quo] that existed before the [ ] violation. In re Zartun, 30 B.R. 543, 546 (B.A.P. 9th Cir. 1983); USCS Bankruptcy Rule 9020. An award of fees can be justified on the basis of restoring the status [quo] that existed before the violation. Id. However, [attorney] fees may be awarded for willful disobedience of a court order. Id.

As discussed above, Creditor issued a demand letter to Debtor dated April 22, 2016, which was a willful breach the Plan and the Court's order confirming the Plan. The Creditor demanded Debtor pay the entirety of the secured claim in the amount of $2,640.00. Moreover, the Creditor demanded a sum $1,660.74 to satisfy the unsecured portion of its claim. The actual amount of the unsecured portion of the claim was $322.11. This amount represented 31.25% of the total unsecured portion of Creditor's claim. The unsecured demand was inclusive of a prepetition collection cost of $175.00 which was not included in its filed claim. It also included additional Trustee Fees in the amount of $700.00 which were not included in its claim. The demand also did not account for the Plan payments Debtor made to Creditor in the amounts of $132.00 and $18.12. Ultimately, Creditor demanded an excess payment of $4,706.36 to release the 2013 Lien. Plaintiff has been damaged in the amount of $4,706.36 including the interest, at the rate of 14.95% compounded, incurred for borrowing the money to pay off excess amount demanded.

Law Offices of
**Tory M Pankopf Ltd**
748 S Meadows Parkway
Suite 244
Reno, Nevada 89521
(775) 384-6956

- 5 -

**Application for Order to Show Cause re Contempt**

1 Prior to issuing its demand, Debtor had demanded a reconciliation of the monies owed but Creditor refused to provide. Creditor could have released the lien and filed a new lien simultaneously with the release of the 2013 Lien. The new lien would have or could have continued to secure the secured portion of the monies remaining to be paid under the Plan.

Debtor made several more demands for Creditor to provide her with a reconciliation of the monies owed. The last was August 30, 2016. Fifteen months later, on November 10, 2017, Creditor finally responded to Debtor's request by sending its reconciliation to Debtor's counsel. The reconciliation acknowledged Creditor's knowledge of the confirmed plan and insisted Debtor voluntarily paid the secured portion of its claim, the unsecured portion its claim, and the additional monies added onto the unsecured portion of its claim. The Creditor reasoned Debtor voluntarily paid its demand in violation of the Plan because if she had not, Creditor would not have released the 2013 Lien and she would not have had her loan funded.

Debtor retained Ms. June Canavan, a bookkeeper with a degree in accounting from the University of San Jose, California, to perform a reconciliation on her behalf. Ms. Canavan invoiced Debtor $10,241.10 for professional service rendered and costs incurred. See Exhibit 11. Debtor also retained legal counsel to assist with the post confirmation issue pertaining to Creditor's demand. Debtor has been invoiced,[3] to date, in the amount of $8,920.00. Debtor has incurred the cost of reopening her bankruptcy case in the amount of $1,167.00. As set forth above, Debtor has overpaid Creditor $4,706.36 at a rate of interest of 14.95% from May 2, 2016, to the present. The sum of Debtor's damages are as follows:

| | |
|---|---|
| Over Payment | $ 4,706.36 |
| Interest 5/2/16 – 5/21/18 | $ 1,443.83 |
| Ms. June Canavan Fee | $10,241.10 |
| Attorney Fees | $ 8,920.00 |
| Court Fee – Reopen Case | $ 1,167.00 |
| **Damages** | **$ 26,478.29** |

---

[3] Does not include services rendered filing this application.

Law Offices of
**Tory M Pankopf Ltd**
748 S Meadows Parkway
Suite 244
Reno, Nevada 89521
(775) 384-6956

- 6 -

**Application for Order to Show Cause re Contempt**

## III.
## CONCLUSION

Based upon the foregoing, Debtor respectfully requests the court enter an order to show cause why Creditor should not be held in contempt of the Court's order confirming the Plan. Alternatively, issue and order for contempt and award Debtor her damages in the amount of $16,478.29.

DATED: May 18, 2018            ***TORY M PANKOPF, LTD***

/s/ Tory M. Pankopf
TORY M. PANKOPF

**Law Offices of**
**Tory M Pankopf Ltd**
748 S Meadows Parkway
Suite 244
Reno, Nevada 89521
(775) 384-6956

- 7 -

**Application for Order to Show Cause re Contempt**